UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

THOMAS DEWEY FRENCH,

          Debtor.
_____/

DANIEL M. McDERMOTT,
UNITED STATES TRUSTEE,

          Plaintiff,

vs.

THOMAS DEWEY FRENCH,

         Defendant.
_____/

Case No. 17-40160

Chapter 7

Judge Thomas J. Tucker

Adv. Pro. No. 17-4307

**TRIAL OPINION**

**I. Introduction**

     The Defendant in this adversary proceeding, Thomas Dewey French, filed a Chapter 7 bankruptcy case on January 6, 2017. In this adversary proceeding, the Plaintiff Daniel M. McDermott, United States Trustee, seeks a judgment denying Defendant French's discharge, based on the "false oath" provision in 11 U.S.C. § 727(a)(4)(A) (Count II of Plaintiff's Complaint).[1] The Court held a bench trial, which was followed by Plaintiff's filing of a complete list of the false oaths the Plaintiff contends Defendant French made. This adversary proceeding is now ready for decision.

     The Court has considered all of the evidence and arguments presented by the parties. This includes the testimony of the witnesses — namely, Defendant Thomas French ("French"),

and Colleen Capalbo.[2] And this includes all of the exhibits that were admitted into evidence — namely, Joint Exhibits 1-20.[3] This Opinion states the Court's findings of fact and conclusions of law.

For the reasons stated below, the Court finds for Defendant French, and will enter a judgment dismissing Plaintiff's complaint objecting to French's discharge, with prejudice.

## II. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

## III. Discussion

### A. Applicable law: Bankruptcy Code § 727(a)(4)(A)

Plaintiff alleges that French made many false statements under oath, with fraudulent intent, so that the Court should deny French a discharge under Bankruptcy Code § 727(a)(4)(A). To describe the law applicable to Plaintiff's claim, the Court adopts and reiterates what it said in a recent opinion in the cases of *McDermott v. Wise and Wise v. Wise* (*In re Wise*), 590 B.R. 401 (Bankr. E.D. Mich. 2018). In that opinion, the Court stated:

> Section 727(a) of the Bankruptcy Code contains twelve enumerated grounds for denying the debtor a discharge. *See* 11 U.S.C. §§ 727(a)(1)-727(a)(12). For the Court to deny the debtor a discharge under any one of these grounds, the party objecting to the discharge must prove all of the elements of such ground by a preponderance of the evidence. *Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 683 (6th Cir. 2000). "'Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's fresh start policy.' However, 'the very purpose of certain sections of the law, like [§ 727(a)], is to make certain that those who seek the shelter of the [B]ankruptcy [C]ode do not play fast and loose with

2

their assets or with the reality of their affairs.'" *Robin Singh Educ. Servs., Inc. v. McCarthy (In re McCarthy)*, 488 B.R. 814, 825 (B.A.P. 1st Cir. 2013) (citing *Palmacci v. Umpierrez (In re Umpierrez)*, 121 F.3d 781, 786 (1st Cir.1997) (internal quotation marks and citations omitted)).

. . .

Section 727(a)(4)(A) of the Bankruptcy Code states:

(a) The court shall grant the debtor a discharge, unless–

. . .

(4) the debtor knowingly and fraudulently, in or in connection with the case--

(A) made a false oath or account[.]

11 U.S.C. § 727(a)(4)(A). The United States Court of Appeals for the Sixth Circuit has specified the elements that the Plaintiff must prove, by a preponderance of the evidence under § 727(a)(4)(A). In *Keeney*, the court stated:

In order to deny a debtor discharge under this section, a plaintiff must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case.

227 F.3d at 685 (citations omitted).

With respect to the first element noted above, that the statement was made under oath, statements made under penalty of perjury, such as [the Debtor's] statements in her bankruptcy schedules and SOFA, are considered to be under oath for purposes of § 727(a)(4)(A). *See Lim v. Storozhenko (In re Storozhenko)*, 487 B.R. 457, 466 (Bankr. E.D. Mich. 2012) (citing *Keeney*, 227 F.3d at 686 and 28 U.S.C. § 1746).

As for the fifth of these elements, materiality:

> The subject of a false oath is material if it "'bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.'"

*Keeney*, 227 F.3d at 686 (citations omitted).

As for the fourth of the *Keeney* elements, *i.e.*, the fraudulent intent element:

> "'Complete financial disclosure'" is a prerequisite to the privilege of discharge. . . . [I]ntent to defraud "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." A reckless disregard as to whether a representation is true will also satisfy the intent requirement. "'[C]ourts may deduce fraudulent intent from all the facts and circumstances of a case." However, a debtor is entitled to discharge if false information is the result of mistake or inadvertence.

*Id.* at 685-86 (citations omitted).

This Court reiterates what it said about the fraudulent intent element, in the case of *Becker v. McInerney* (*In re McInerney*), 509 B.R. 109, 114-16 (Bankr. E.D. Mich. 2014):

> [N]ot caring whether some representation is true or false—the state of mind known as "reckless disregard"—is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material.

*In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)(citations omitted).
. . . .

In a recent bench opinion in *McDermott v. Schwenck (In re Schwenck)*, this Court interpreted *Keeney* as requiring the Court to employ a "totality of circumstances" test to determine whether the

4

"fraudulent intent" element of § 727(a)(4)(A) has been satisfied. (*See* Docket # 30 in Adv. Pro. No. 13-4701 (Tr. of Opinion on Trustee's Mot. for Summ. J.) at 14-17.) Under that test, a finding that a debtor had a "reckless disregard as to whether a representation is true," does not, standing alone, *require* the court to find that the "fraudulent intent requirement" of § 727(a)(4)(A) has been established. Rather, whether a debtor had a "reckless disregard as to whether a representation is true," is one factor among others that a court may consider in determining whether to draw an inference of fraudulent intent on the part of a debtor. *Id.* In other words, the Court *may*, but

> is not required to make a finding of fraudulent intent solely because the plaintiff has shown a reckless disregard by the debtor as to truth, ultimately it's all the facts and circumstance that the Court must consider to determine whether the debtor is guilty of actual fraudulent intent and fraudulent intent under *Keeney* . . . mean[s] actual intent to defraud, such as an actual intent by the debtor to conceal, for example, an asset that the debtor wants to keep . . . for his or herself and not lose to the administration of the bankruptcy case by disclosing it.

(*Id.* at 17.)

This Court interprets *Keeney* and similar cases as permitting, but not requiring, a finding of fraudulent intent if the debtor is guilty of reckless disregard for the truth. "[Fraudulent intent] can be found based on 'the cumulative effect of a series of innocent mistakes which evidence a pattern of reckless and cavalier disregard for the truth.'" *Sheehan & Associates PLC v. Lowe*, No. 12-11768, 2012 WL 3079251, at *7 (E.D. Mich. July 30, 2012)(citation omitted), *aff'd*, 518 Fed. Appx. 348 (6th Cir. 2013); *see also Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992) (footnote omitted) (citation omitted) (holding that the bankruptcy court's findings "that the existence of more than one falsehood, together with [the debtor's] failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended schedules, constituted reckless indifference to the truth and, therefore, the requisite intent to deceive [under § 727(a)(4)(A)]" were "supported by the record and are not clearly erroneous"); *Boroff v. Tully* (*In re Tully*), 818

5

F.2d 106, 112 (1st Cir. 1987) (footnote omitted) (citation omitted) (holding that "there was ample evidence in the record to support a reasoned conclusion by the bankruptcy judge that [the debtor] exhibited the 'reckless indifference to the truth,' which has consistently been treated as the functional equivalent of fraud for purposes of §727(a)(4)(A)"); *Stevenson v. Taylor* (*In re Taylor*), 461 B.R. 420, 423 (E.D. Mich. 2011) (quoting *Keeney*, 227 F.3d at 685-86)("The Sixth Circuit has provided that '"intent to defraud' involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression' [and] . . . '[a] reckless disregard as to whether a representation is true will also satisfy the intent requirement.'"); *Stevenson v. Cutler (In re Cutler*), 291 B.R. 718, 726 (Bankr. E.D. Mich. 2003) (citation omitted) (explaining that "[a] series or pattern of errors or omissions may have a cumulative effect giving rise to an inference of an intent to deceive . . . [but that] the discharge is not to be denied when the untruth was the result of a mistake or inadvertence"); *March v. Sanders* (*In re Sanders*), 128 B.R. 963, 972 (Bankr. W.D. La. 1991) (citations omitted) (explaining, in relevant part, that under § 727(a)(4)(A), "[t]he statement under oath must be known by its maker to be false and be made willfully (rather than inadvertently) with an intent to defraud"; that "[t]his intent [to defraud] may be established by circumstantial evidence"; and that "[s]tatements made with reckless indifference to the truth are regarded as intentionally false").

In an analogous context, in *Bullock v. Bankchampaign, N.A.*, 133 S. Ct. 1754, 1759 (2013), the United States Supreme Court recently held that "defalcation" under 11 U.S.C. § 523(a)(4) must be treated similarly to the way "fraud" is treated in that section; that fraud requires a showing of "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong;" but that an intentional wrong includes "not only conduct that the fiduciary knows is improper, but also reckless conduct of the kind that the criminal law often treats as the equivalent [of an intentional wrong];" and that reckless conduct for purposes of § 523(a)(4) is when a "fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty"). *See also Shapiro v. Plante & Moran, LLP* (*In re Connolly North America, LLC*), 376 B.R. 161, 184 (Bankr. E.D. Mich. 2007) (citations omitted) (discussing levels of culpability in the context of a failure to comply with discovery

obligations) ("'Reckless disregard' . . . is '[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others, and by a conscious (and sometimes deliberate) disregard for or indifference to that risk.'")

590 B.R. at 429, 436-38.

**B. Application of law to the facts of this case**

In this case, it is undisputed that the first two elements under § 727(a)(4)(A) are established, as to all of the alleged false statements. First, all of French's statements at issue were made under oath. Statements made under penalty of perjury, as many of French's statements were, are considered to be under oath for purposes of § 727(a)(4)(A). *See, e.g.*, *Keeney*, 227 F.3d at 686; *see generally* 28 U.S.C. § 1746.

Second, the Court finds that French's statements listed in the chart below as Item Nos. 1-3, 5, 8, 10-11, 13-14, 16-17, 21, and 24-27 were "false," in that they were incorrect.

With respect to the fifth element, the Court finds that each of the alleged false statements by French "related materially to the bankruptcy case," because each of them clearly "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *See Keeney*, 227 F.3d at 686. This very broad definition of materiality is relatively easy to meet, in part because it literally covers even *trivial* matters, as long as they relate to the bankruptcy debtor's "business transactions or estate," or the debtor's "assets," or the debtor's "business dealings, or the existence and disposition of his property."

French disputes the third and fourth elements of Plaintiff's "false oath" claim, namely the elements that "the debtor knew the statement was false;" and that "the debtor made the statement

7

with fraudulent intent." *Id.* at 685.

As indicated in the chart below, with respect to each of the statements that the Court finds to have been false, the Court finds that French did know that the statement was false. What this finding means is that when French made the false statements at issue, he knew the correct (true) facts, even if he may have forgotten them at the time, or simply made an erroneous statement without fraudulent intent. Thus, the Court's finding on this knowledge-of-falsity element does *not* establish the fraudulent-intent element as to any of the false statements at issue. That is a separate element, which the Plaintiff must prove, by a preponderance of the evidence.

The Plaintiff's case fails on the element of fraudulent intent. As the chart below indicates, the Court finds, from all the facts and circumstances of this case, that French did not make any of the statements that the Court finds to be false with fraudulent intent. Rather, the Court finds that each of these false statements that French made was: (1) an innocent mistake or inadvertent error on French's part; or (2) concerned a matter that was so trivial, or otherwise of such a nature, that French could not have had any motive or any intention to lie about it; or both (1) and (2). And while the Court finds that French made a number of false (*i.e.*, incorrect) statements, the Court does not find that French had a reckless disregard for the truth, under the circumstances. From all of this, the Court concludes that French did not make any of the false statements with fraudulent intent.

For these reasons, the Court finds for French, and will enter judgment dismissing the Plaintiff's complaint with prejudice. French will get his bankruptcy discharge.

### C. The Court's findings regarding the specific false statements at issue

The following chart lists all of the statements under oath made by French that the Plaintiff

8

contends were false oaths under § 727(a)(4)(A). In this chart, the column labeled "Alleged False Oath" lists each of the false oaths alleged by the Plaintiff. These are copied from the list filed by the Plaintiff after trial.[4] The other columns in the chart list the Court's findings about each alleged false oath; namely, whether the Plaintiff met his burden of proving the statement was false (the "Proven False" column); whether French knew the statement was false when he made it ("Knowledge of Falsity" column); and whether French made the statement with fraudulent intent ("Fraudulent Intent Proven?" column). In listing its findings in the following chart, the Court will explain many of its findings in accompanying endnotes, below.

| Alleged False Oath | Proven False? | Knowledge of Falsity? | Fraudulent Intent Proven? |
|---|---|---|---|
| 1. That the Defendant's Schedules were true, accurate and complete. [Ex. 1, p.76]. | Proven False | Proven | Not Proven |
| 2. That the Defendant's Statement of Financial Affairs was true and correct. [Ex. 1, p.83]. | Proven False | Proven | Not Proven |
| 3. The Defendant's 341 testimony that his Schedules and his Statement of Financial Affairs were truthful and accurate, and that no changes needed to be made to those documents. [Ex. 2, 4:4-22]. | Proven False | Proven | Not Proven[5] |
| 4. That Schedule A/B, line 19 discloses no current interests in incorporated or unincorporated businesses. [Ex. 1, p.13]. | Not Proven False[6] | not applicable | not applicable |
| 5. If the Defendant's testimony is believed that he is an employee of American Expo Pros, that Schedule I does not disclose that employment or any income from that employment. [Ex. 1, pp.72-73]. | Schedule I Proven False[7] | Proven | Not Proven[8] |

| Alleged False Oath | Proven False? | Knowledge of Falsity? | Fraudulent Intent Proven? |
|---|---|---|---|
| 6. That Question 4 on the Statement of Financial Affairs does not include the money the Defendant grossed on the power washing job with Dr. Coombs in 2016. [Ex. 1, p.77, Trial Tr., 64:4-5]. | Not Proven False[9] | not applicable | not applicable |
| 7. If the Defendant's testimony is believed that his girlfriend's corporations are separate from his former ones, that Question 18 on the Statement of Financial Affairs discloses no transfers of assets to his girlfriend's companies, including the "Marijuana Phone Number" discussed at trial. [Ex. 1, p.81]. | SOFA # 18 Not Proven False[10] | not applicable | not applicable |
| 8. That Question 27 on the Statement of Financial Affairs does not disclose Show Pros, LLC. [Ex. 1, pp.82-83]. | Proven False[11] | Proven | Not Proven[12] |
| 9. That Question 27 on the Statement of Financial Affairs does not disclose American Expo Pros, LLC. [Ex. 1, pp.82-83]. | Not Proven False[13] | not applicable | not applicable |
| 10. That Question 27 on the Statement of Financial Affairs discloses that Blastaway "never got started." [Ex. 1, pp.82-83]. | Proven False | Proven | Not Proven |
| 11. That Question 27 on the Statement of Financial Affairs discloses that Blastaway "never operated." [Ex. 1, pp.82-83]. | Proven False[14] | Proven | Not Proven[15] |
| 12. During his 341 testimony, when asked about the two companies the Defendant disclosed he was involved in [during] the four years prior to his bankruptcy, that the Defendant did not disclose there were additional companies not listed. [Ex. 2, 9:14-19]. | Not Proven False, because Defendant was not asked this at the cited point during his 341 testimony | not applicable | not applicable |

| Alleged False Oath | Proven False? | Knowledge of Falsity? | Fraudulent Intent Proven? |
|---|---|---|---|
| 13. During his 341 testimony, that Defendant testified there was "nothing more than files and a computer" when AMMP shut down, omitting the "Marijuana Phone Number" discussed at trial. [Ex. 2, 11:17-20]. | Proven False | Proven | Not Proven[16] |
| 14. During his 341 testimony, when asked about any businesses the Defendant was involved in [during] the six years prior to his bankruptcy, that the Defendant only disclosed Blastaway. [Ex. 2, 13:19-23]. | Proven False | Proven | Not Proven[17] |
| 15. The Defendant's testimony during his 341 meeting that Blastaway "never got off the ground." [Ex. 2, 14:2]. | Not Proven False[18] | not applicable | not applicable |
| 16. The Defendant's testimony during his 341 meeting that Blastaway "never did any business." [Ex. 2, 8-10]. | Proven False | Proven | Not Proven[19] |
| 17. After discussing Blastaway in his 341 testimony, that the Defendant testified that there were no other business entities that he had been involved in during the six years prior to his bankruptcy. [Ex. 2, 14:19-21]. | Proven False | Proven | Not Proven[20] |
| 18. The Defendant's testimony during his 341 meeting that no one owed the Defendant any money as of the 341 date. [Ex. 2, 15:11-12]. | Not Proven False[21] | not applicable | not applicable |
| 19. If the Defendant's testimony is believed that his girlfriend's corporations are separate from his former ones, the Defendant's testimony during his 341 meeting that he did not sell, transfer or give away anything in the last two years, including the "Marijuana Phone Number" discussed at trial. [Ex. 2, 16:13-15]. | Not Proven False[22] | not applicable | not applicable |
| 20. The Defendant's testimony during his 341 meeting that he does not own or operate a business currently. [Ex. 2, 16:21-23]. | Not Proven False[23] | not applicable | not applicable |

| Alleged False Oath | Proven False? | Knowledge of Falsity? | Fraudulent Intent Proven? |
|---|---|---|---|
| 21. If the Defendant's testimony is believed that his girlfriend's corporations are separate from his former ones, the Defendant's testimony during his 341 meeting that he has no income aside from as "sales and office help" for American Medical Professionals. [Ex. 2, 17:4-6]. | this 341 testimony Proven False | Proven | Not Proven[24] |
| 22. The Defendant's trial testimony that he did not sign the Articles of Organization for American Expo Pros, LLC. [Ex. 4, p.2; Trial Tr., 82:15-22]. | Not Proven False[25] | not applicable | not applicable |
| 23. The Defendant's statement in the Declaration under Penalty of Perjury in support of denying summary judgment that Blastaway only had one client. [Ex. 20, p.8; Trial Tr., 65:10-25]. | Not Proven False; no such statement made in that Declaration | not applicable | not applicable |
| 24. That the debt to Thomas Coombs disclosed in Schedule F was from 2014, undisputed, and pursuant to a judgment. [Ex. 1, p.64; Trial Tr., 66:20-25]. | Schedule F Proven False | Proven | Not Proven[26] |
| 25. The Defendant's 2004 testimony that Show Pros, LLC was involved with the THC Expo. [Ex. 15, 20:8-16; Trial Tr., 80:2-8]. | Proven False | Proven | Not Proven[27] |
| 26. If the Defendant's testimony is believed that his girlfriend's corporations are separate from his former ones, the Defendant's failure to disclose commissions from American Expo Pros as either money earned in 2016 or 2017 on Question 4 to the Statement of Financial Affairs, or as currently still owing on Schedule A/B. [Trial Tr., 103:14-18, 113:9-18]. | Proven that either Schedule A/B false, or in the alternative, SOFA #4 false, one or the other | Proven | Not Proven[28] |

| Alleged False Oath | Proven False? | Knowledge of Falsity? | Fraudulent Intent Proven? |
|---|---|---|---|
| 27. If the Defendant's testimony is believed that his girlfriend's corporations are separate from his former ones, that the Defendant did not disclose joint ownership of the "Marijuana Phone Number" on Schedule A/B. [Trial Tr., 157:6-16]. | Schedule A/B Proven False | Proven | Not Proven[29] |

In sum, the Court finds that the Plaintiff failed to meet its burden of proving, by a preponderance of the evidence, all of the necessary elements under § 727(a)(4)(A), with respect to any of the alleged false statements made by Defendant French. Thus, judgment must be for French.

## IV. Conclusion

Based on the findings of fact, conclusions of law, and the reasons stated in this Opinion, the Court will enter judgment for the Defendant Thomas French and against the Plaintiff United States Trustee on Count II of the Complaint, and will enter a judgment dismissing the Plaintiff's complaint, with prejudice. Entry of such judgment will conclude this adversary proceeding.

**Signed on November 15, 2018**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**

---

1. Before trial, Plaintiff voluntarily dismissed the only other count in his complaint, Count I, with prejudice. (*See* Order Granting Plaintiff's Oral Request to Voluntarily Dismiss Count I of Plaintiff's Complaint (Docket # 19).)

2. A transcript of the trial is filed at Docket # 40 in this adversary proceeding, and that transcript is cited in this Opinion using the form "Tr. at __."

3. In this Opinion, the Court will cite the joint trial exhibits using the form "JX-__."

4. "Plaintiff's Post-Trial Supplemental List of Proven False Oaths by the Defendant" (Docket # 41). During closing arguments at trial, the Court directed Plaintiff to file this list, and directed that the list include *every* statement by French that Plaintiff contends was false and that meets all the other elements to be a "false oath" under § 727(a)(4)(A). (*See* Tr. at 171-72, 223.)

5. The Court's findings about Item Nos. 1-3 are all derived from the Court's findings about the other alleged false statements in the chart. For example, the Court finds falsity proven about Item No. 1 based on the findings of falsity made about specific statements in Debtor's schedules that are listed as Item Nos. 5, 24, and 27, and possibly the alternative finding about Item No. 26. Similarly, however, the Court finds fraudulent intent not proven as to Item No. 1 based on the Court's finding that fraudulent intent is not proven with respect to Item Nos. 5, 24, 26, and 27.

6. The Court finds, among other things, that as of the January 6, 2017 bankruptcy petition date, which is also the date on which French filed his schedules and Statement of Financial Affairs ("SOFA"), French had no interests in any incorporated or unincorporated business. Rather, as of that time French had had such interests only in the past, including his interests in the six former businesses disclosed in Schedule A/B # 4 (list of "FDBA" businesses) and in SOFA # 27 (JX-1 at pdf pages 2, 82-83). And as also found elsewhere in this chart and the accompanying endnotes, the Court finds that French had no ownership interest in any of the businesses known as American Expo Pros LLC, American Expo Pros, or American Medical Professional (aka AMP).

7. The Court *does* believe French's testimony, and the testimony of Colleen Capalbo (French's long-time girlfriend at the time of trial), who each testified that French did not and does not have any ownership interest in the business known as American Expo Pros. (Testimony of Thomas French, Tr. at 85-87; 91, 140-42 (cited in this Opinion as "French, Tr. at __"); Testimony of Colleen Capalbo, Tr. at 162-63, 167) (cited in this Opinion as "Capalbo, Tr. at __"). The Court credits this testimony, even though French admits that he "probably" told a newspaper reporter in 2016 that he was the "owner and promoter of American Expo Pros." (JX-5, June 10, 2016 article about the Armada Biker Days biker festival; French, Tr. at 89-90). French would have told the reporter this, as part of his effort to sell vendor space for the biker festival and promote the event, he says, "[b]ecause it sounds better in the paper." (*Id.* at 90). That this was just sales puffery plausibly explains why French would falsely tell a reporter that he was the owner when in fact he was not the owner. Indeed, the same newspaper article shows a picture of French sitting on a motorcycle, with the caption "Tom French rides his Harley-Davidson motorcycle." (JX-5, first page). But it is undisputed that the pictured motorcycle did not belong to French, that French has never owned a Harley, had never been on one in his life, and in fact is "scared to death of them." (French, Tr. at 91).

The Court finds that the business known as American Expo Pros was and is a sole proprietorship owned entirely by Ms. Capalbo, and that French worked for that business only as an employee, or as a 1099 independent contractor, selling vendor space for two shows that the business put on in late February and March 2017. The testimony of French and Capalbo about this is corroborated by the documents the Plaintiff obtained from the Roostertail, the venue where the 7th Annual THC Expo occurred, on March 17-19, 2017 (JX-12). This exhibit includes a lease for the event that was signed by Colleen Capalbo, and this exhibit includes copies of 10 checks written to the Roostertail, totaling $16,400.00 and dated over the time period January 14, 2017 to February 7, 2017. All of these checks were drawn on an account in the name of "COLLEEN CAPALBO DBA AMERICAN EXPO PROS." And all of these checks were signed by Colleen Capalbo. (*See also* French, Tr. at 120, lines 8-16).

14

French earned sales commissions from Capalbo's business, American Expo Pros, totaling roughly $9,000.00 during the 2016-2017 time period. French admitted in his testimony that he did not include American Expo Pros as an employer or source of income, and did not list any income from that source, in his Schedule I. (JX-1 at pdf pages 72-73; French, Tr. at 99-100, 103).

8. Schedule I disclosed only income of $2,800.00 per month in gross income, in the form of the salary paid to French by another one of Capalbo's sole proprietorship businesses, "American Medical Professional" (aka AMP). French testified that he was and is paid a salary from that business of $700.00 per week. French also testified that he earned a total of about $9,000.00 in sales commissions from American Expo Pros, for work he did to promote and sell vendor/exhibitor space for two shows, known as the Gibralter Home Improvement and Garden Show, which occurred on February 24-26 and March 3-5, 2017, and the 7th Annual THC Expo, which occurred on March 17-19, 2017. (*See* JX-6 through 11; French, Tr. at 112-13). French testified that he was paid a commission in cash by Capalbo as and when he made sales for these shows, in amounts of $150.00 to $300.00 or so at a time, and that he earned the total sum of about $9,000.00 over a several month period, during 2016 to sometime in early 2017. (*See* French, Tr. at 112-13, 126-27).

The Plaintiff failed to prove, by a preponderance of the evidence, that French had a fraudulent intent in failing to disclose his employment with American Expo Pros, and in failing to show any income from that source on his Schedule I. The income was irregular in amount and sporadic, and spread over several months. Under the circumstances, this income was not large enough that French would have had a motive to conceal it.

9. The French testimony cited by the Plaintiff as proving falsity does not actually do so. The referenced power washing job for Dr. Coombs in 2016 was done by French with another person, using the assumed name (dba) of "Blastaway." For this job French was given a check for $3,400.00, dated August 3, 2016, which he cashed. (JX-14, seventh unnumbered page; French, Tr. at 52-55, 61). This was the gross payment received from French's customer for this job, a job which, French testified, resulted in a loss. (*See* JX-20, eighth page (Declaration Under Penalty of Perjury of French at ¶ 2, stating that the job for Dr. Coombs "resulted in a loss of income and lawsuit against me for even further damages")). When asked whether he had disclosed that he had "done a $3,400 job in the year before [he] filed for bankruptcy," French initially answered "I guess I didn't." (French, Tr. at 63). Then he was asked whether the $3,400 is "part of your income taxes" for 2016. French answered "no." (*Id.* at 64). But then French immediately corrected his answers about this $3,400.00, by stating "And you know what? Maybe I'm giving the wrong answer. I don't remember how much. I don't remember every detail." (*Id.* at 64.) The Court finds that Plaintiff has not met his burden of proving that French's $3,400 in gross income from the job for Dr. Coombs is *not* included in the $34,000.00 in gross income that French disclosed in SOFA # 4 (JX-1 at pdf page 77).

10. The Court *does* believe French's testimony, and the testimony of Colleen Capalbo, both of whom testified that Ms. Capalbo's businesses, which are not corporations, (American Expo Pros and American Medical Professionals (aka AMP)) are separate from French's former businesses. (As to American Expo Pros, *see* discussion and record citations in endnote 7 above. As to American Medical Professionals (aka AMP), *see* French, Tr. at 142; Capalbo, Tr. at 159, 161-62, 167-169). In this item No 7, the Plaintiff alleges that French transferred, to Ms. Capalbo, French's right to use a particular toll-free telephone number that he had previously used in his former medical marijuana licensing business (the number was "877-RX-42099" according to French, (French, Tr. at 28)). But the Court credits the testimony of both French and Capalbo, who testified that both French and Capalbo had the right to use this telephone number, and the Court credits the testimony of Capalbo that both of them had been listed for some five years as the customers on the AT&T monthly telephone bill for this phone number. (*See* French, Tr. at 128-29, 148-49, 155; Capalbo, Tr. at 166). The Plaintiff has failed to prove that French had made any sort of transfer of his rights, held jointly with Capalbo, within the 2 years before

15

French filed bankruptcy, or at any time. Thus, Plaintiff has failed to prove that French's answer to SOFA # 18 was false.

11. This failure to disclose Sho Pros, LLC at SOFA #27 was a false statement, because French had an interest in this LLC during the 4 years before he filed bankruptcy. French formed this LLC on September 24, 2012, and it was formally dissolved on August 5, 2014. (*See* JX-3; French, Tr. at 74-75).

12. French's failure to disclose Sho Pros, L.L.C. at SOFA # 27 clearly was without any fraudulent intent. That LLC was dissolved in August 2014, roughly two and a half years before French filed this bankruptcy case on January 6, 2017. And that LLC did only one show, a hunting and fishing show in Biloxi, Mississippi on September 9, 2013. (French, Tr. at 73-77, 80). The show "failed" and made no money. (*Id.* at 81-82). There is no evidence that this dissolved LLC had any assets or value. French clearly had no motive for trying to conceal his former interest in this long-dissolved LLC. And any suspicion that French was trying to conceal this LLC is dispelled by the fact that French *did* disclose this LLC, albeit as "Showpros LLC," in the Schedule B and the Statement of Financial Affairs that he filed on September 11, 2013, in his previous Chapter 13 bankruptcy case, Case No. 13-57074. (*See* Docket # 1 in Case No. 13-57074, at pdf pages 9, 39; French, Tr. at 76, 154-55).

13. This Michigan LLC was formed when its articles of organization were filed on March 2, 2016. Those articles were signed by Robert Capalbo, who is Colleen Capalbo's father, as an "organizer" and as the LLC's resident agent. The articles also list French as an "organizer" and bear a signature in the name of French. But French denies that it is his signature, and disclaims any involvement with this LLC. (JX-4; French, Tr. at 82, 83, 85). The Plaintiff tried to show that this was in fact French's signature, based on a non-expert handwriting comparison with French's signature on another document (JX-3). But the Court is not persuaded by this non-expert handwriting evidence that French in fact signed JX-4. French's handwritten signature, in JX-3, is simple enough that it could easily be copied by another person; the handwriting for the two signatures is similar, but different in some specific ways pointed out by French's testimony (French, Tr. at 84-85); and French's signature on the back of the Coombs check in JX-14 is rather different from French's purported signature on JX-4, as French pointed out in his testimony (French, Tr. at 84). A conclusion at least equally likely is that Robert Capalbo signed French's name to JX-4. (Neither party called Robert Capalbo as a witness at trial.) Finally, French testified that this LLC, American Expo Pros, LLC, never did any business (French, Tr. at 153-54), and the Plaintiff presented no evidence to the contrary.

14. Blastaway was an assumed name under which French admits that he did two jobs, power-washing homes — one for $450.00 in 2015, and one for Dr. Coombs for the gross price of $3,400.00 in August 2016. (French, Tr. at 42-43, 60-62, 65-66; *see also* endnote 9 above.) Even though this "Blastaway" business only ever did two jobs, it is *not* true that it "never got started" or that it "never operated."

15. French stopped doing any power-washing work, under the Blastaway name or otherwise, in August 2016, some 4-5 months before filing this bankruptcy case, and according to French, this business never made any money. (*See* French, Tr. at 42-44). In any event, there is no evidence that this sole-proprietor business had any value as of the bankruptcy petition date. French had no motive to try to conceal it.

16. AMMP, or American Medical Marijuana Professionals, was an assumed name under which French operated his medical marijuana licensing business for several years, until he lost the business, over the time period of August or September 2015 to December 1, 2015, the date on which French was first incarcerated. (*See* French, Tr. at 21, 38, 127-28; SOFA # 27, JX-1 at pdf page 82). French used the telephone number discussed in endnote 10 above in operating this business. French's right to use this telephone number, which he held jointly with Colleen Capalbo, may have had some value in his medical marijuana licensing business, and may be considered

16

property and an asset of the business. For this reason, it was not true that when AMMP shut down it had only "files and a computer." It also had the right to use the phone number. And French knew that. But the idea — that a telephone number, or the right to use a particular telephone number, can be a business asset — is a rather subtle point of law, and is something that reasonably did not occur to French, who is an unsophisticated non-lawyer, with "an eighth-grade education." (*See* French, Tr. at 76, 157). And the Plaintiff presented no evidence of any reason why French may have had a motive to conceal this telephone number "asset." So the Court finds that the false statement French made about it was not made with fraudulent intent.

17. This is false only because of French's failure to also disclose Sho Pros, LLC, the LLC dissolved in 2014. But for the reasons discussed in endnote 12 above, the Court finds that this non-disclosure was not done with fraudulent intent.

18. This statement is too vague to be considered false, under the circumstances discussed in endnotes 9, 14, and 15 above, particularly given that Blastaway did only two small power-washing jobs and then ceased business.

19. *See* discussion in endnotes 9, 14, and 15 above.

20. This statement is false only because of French's failure to disclose Sho Pros, LLC, and that failure was not done with fraudulent intent. *See* discussion in endnote 17 above. French disclosed all his other pre-petition businesses, including Bestes Lawn and Patio, and American Medical Marijuana Professionals (aka AMMP) in SOFA # 27 (JX-1 at pdf pages 82-83) and in his § 341 meeting testimony (JX-2 at 9-14).

21. The correct citation for French's testimony to this effect is JX-2 at *16*, lines 11-12. The Plaintiff contends that this statement is false because at the time of the § 341 meeting in this case (March 8, 2017), French was owed sales commissions by Colleen Capalbo's sole-proprietor business, American Expo Pros. But the evidence at trial did not actually prove that fact.

22. The Plaintiff contends that because Colleen Capalbo used this telephone number from and after December 2015 in her sole-proprietor business, American Medical Professionals (aka AMP), the right to use it must have been transferred to her by French. But the Court cannot draw such a conclusion, because Ms. Capalbo already had shared the right to use that telephone number jointly with French, for several years. *See* discussion in endnote 16 above.

23. *See* discussion in endnotes 6, 7, 10, 13, and 15 above.

24. This statement is false because French also had some irregular, sporadic income from sales commissions during the period 2016 and early 2017, for work he did for Colleen Capalbo's sole proprietor business, American Expo Pros, on the home improvement show and the annual THC Expo show. But the Court finds that this false statement was not made with fraudulent intent. *See* discussion in endnote 8 above.

25. *See* endnote 13 above.

26. These statements in Schedule F were untrue; Coombs did not have a judgment against French; and the debt arose in 2016, not 2014. But there is no conceivable motive that French could have had for purposely stating these falsehoods; he clearly had nothing to gain by them. These misstatements are trivial, under the circumstances.

27. As French testified at trial, the THC Expo he was referring to in his Rule 2004 examination testimony was held 8 years before trial, and Sho Pros, LLC was not organized until after that time, in 2012. As French testified at trial, he ran that first THC Expo through an entity called Budget Consumer Shows, an entity that French disclosed in his SOFA # 27, JX-1 at pdf page 83. (French, Tr. at 77-80, 104-05; *see also* discussion in endnote 11 above). So French admittedly made an incorrect statement in his Rule 2004 examination testimony. But this was simply a trivial mistake by French in his Rule 2004 examination testimony. French had no apparent motive for making this incorrect statement in his Rule 2004 examination testimony, and Plaintiff has not proven that French made this false statement with any fraudulent intent.

28. *See* discussion in endnotes 7, 8, and 24 above.

29. *See* discussion in endnotes 10, 16, and 22 above. As the Court noted in endnote 16 above, the idea that a telephone number, or the right to use a particular telephone number, can be an item of property that must be disclosed in Schedule A/B is a rather subtle point of law. And it is something that reasonably did not occur to French, who is an unsophisticated non-lawyer, with "an eight-grade education." (*See* French, Tr. at 76, 157). And the Plaintiff presented no evidence of any reason why French may have had a motive to conceal this telephone number "asset." The Court finds that the false statement French made in failing to disclose in his bankruptcy schedules his right to use this telephone number was not made with fraudulent intent.